# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Case No. 07-119 (GK) |
| TROY LEWIS, | |
| Defendant. | |

## MEMORANDUM OPINION

Two motions are pending before the Court: the Government's Motion for an Order for Defendant's Trial Counsel to Submit an Affidavit or Declaration Pursuant to the Court's Order of July 6, 2011 ("Govt.'s Motion for Order") [Dkt. No. 94] and Defendant's Motion to Vacate, Set Aside, or Correct Sentence ("Def.'s Motion to Vacate") [Dkt. No. 54]. Upon consideration of both Motions with all their accompanying briefing, the applicable case law, and the record in this case, the Court concludes that the Government's Motion is **denied**, and Defendant's Motion is **denied**.

## I. GOVERNMENT'S MOTION FOR AN ORDER

On July 26, 2010, Defendant filed a Motion to Vacate. At that time, Defendant raised the following arguments: (1) trial counsel failed to move to dismiss the case because of violation of the Speedy Trial Act, 18 U.S.C. § 3161, et seq.; (2) trial counsel failed to move to exclude the evidence seized by members of the Naval Criminal Investigative Service("NCIS") in violation of the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385, and 10 U.S.C. § 375; (3) trial counsel failed to move to exclude the computer and hard drive that were seized during the search of Defendant's home because the chain-of-custody was not satisfied; and (4) trial counsel failed to conduct an adequate pre-trial

investigation in the case, failed to adequately interview and prepare witnesses for testimony, and failed to preserve issues for appeal.

On March 9, 2011, Defendant filed a Motion in Limine to Bar Former Defense Counsel from Speaking with Government Counsel [Dkt. No. 63], and the Court denied that Motion on April 20, 2011 [Dkt. No. 67]. On March 29, 2011, the Government filed its Opposition to Defendant's Motion to Vacate, Set Aside or Correct Sentence ("Govt Opp'n") [Dkt. No. 64], and on May 31, 2011, Defendant filed his Reply to Government's Opposition to Motion to Vacate, Set Aside, or Correct Sentence [Dkt. No. 79]. In that Reply, Defendant no longer argued the fourth claim contained in his original Motion, and the Court deems it conceded. Thereafter, trial counsel, a member of the Federal Public Defender Service, took the position that he was not authorized to provide the Government with an affidavit that responded to the claims Defendant was making in this Motion. On April 8, 2011, the Government filed a Motion for a Waiver of Attorney-Client Privilege and Motion to Compel Production of Documents [Dkt. No. 66], which was granted on May 5, 2011 [Dkt. No. 72]. On May 5, 2011, Defendant filed a Motion for Reconsideration of the May 5, 2011 Order [Dkt. No. 74], and on July 6, 2011, the Court denied that Motion [Dkt. No. 90]. On August 11, 2011, the Government filed a Motion for an Order for Defendant's Trial Counsel to Submit an Affidavit or Declaration Pursuant to the Court's Order of July 6, 2011 [Dkt. No. 94]. On September 21, 2011, Federal Defender filed a Response to the Government's Motion for an Order, essentially opposing that Motion ("FPD Resp.") [Dkt. No. 99]. On October 26, 2011, the Government filed its Reply to Federal Defender's September 21, 2011 Response [Dkt. No. 104].

In its Response, Federal Defender argues that the Court has no authority to order Defendant's trial counsel to produce the affidavit sought by the Government. That argument is contrary to this

Court's Order and reasoning of April 20, 2011 [Dkt. No. 67], and the Court's Order of May 5, 2011 [Dkt. No. 74]. Federal Defender "does not dispute that where a claim of ineffective assistance of counsel is asserted, there is an 'implied waiver' of the [attorney-client] privilege." FPD Resp. at 9, (citing Bittaker v. Woodford, 331 F.3d 715, 719-20 (9th Cir. 2003) (*en banc*)). What Federal Defender does emphasize is that "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." Id. (quoting Bittaker, 331 F.3d at 720). The Ninth Circuit also points out in Bittaker that courts have "closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question." Bittaker, 331 F.3d at 720; FPD Resp. at 9. The Government does not seriously contest those propositions. While this Court firmly believes that it has already ruled in prior Orders that it does have the authority to <u>order</u>, not just authorize, the filing of an affidavit from defense counsel, the Court does agree that if such an affidavit is ordered, it must be tailored to the specific issues raised by the Defendant in his Motion to Vacate.

In addition to arguing that the Court lacks authority to order the filing of an affidavit from trial counsel, Federal Defender also argues that it is not necessary to order such an affidavit from trial counsel even if it were properly limited in scope. Federal Defender believes that all three of the remaining claims of ineffectiveness (the Speedy Trial Act claim, the PCA claim, and the chain-of-custody claim) can be decided on the existing record before the Court, as a matter of law, without any need for an affidavit from trial counsel. In response, the Government agrees with Federal Defender as to the Speedy Trial Act claim and the PCA claim. As to the chain-of-custody claim, the Government takes no position.

For the reasons stated, infra, at pages 8-9, the Court has concluded that the chain-of-custody claim can be decided on the basis of the existing evidentiary record, and therefore the Government's Motion for an Order is **denied**.

## II. DEFENDANT'S MOTION TO VACATE

### A. Defendant's Speedy Trial Act Claim

Defendant argues that trial counsel rendered ineffective assistance of counsel because he failed to move to dismiss the case under the Speedy Trial Act when his trial was not held within the 70-day time limit set forth in that Act. Counsel agree, and this Court agrees as well, that Defendant is presenting a pure issue of law that can be decided on the existing record and no further evidence needs to be introduced.

On May 2, 2007, Defendant was indicted by a Grand Jury on one count of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b), and one count of traveling with intent to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b). On June 8, 2007, the Government filed a Motion in Limine, seeking the Court's permission to introduce evidence of Defendant's possession of child pornography and child erotica under Federal Rules of Evidence 404(b) and 414 [Dkt. No. 9]. Defendant filed an opposition on June 25, 2007 [Dkt. No. 12], and the Court ruled on July 26, 2007 granting the Government's Motion in Limine [Dkt. No. 14]. On June 13, 2007, Defendant also submitted a pre-trial motion seeking to dismiss the first count of his indictment for insufficiency [Dkt. No. 10]. The Government filed an Opposition on June 21, 2007 [Dkt. No. 11]. On July 5, 2007, the Court issued a written Order denying the Motion [Dkt. No. 13].

Defendant's trial began on September 10, 2007.

Defendant argues, relying heavily upon United States v. Marshall, No. 09-3140, 2011 U.S. App. LEXIS 11686 (D.C. Cir. June 9, 2011), that trial counsel failed to file an appropriate Speedy Trial Act Motion. In that case, the Court of Appeals held that "a government filing indicating its intent to introduce Rule 404(b) evidence at trial is treated as a notice that requires no district court action and that cannot, by itself, toll the Speedy Trial Act Clock." Marshall, 2011 U.S. App. LEXIS 11686, at *18-19. In Marshall, the Court vacated the judgment of conviction, and remanded the case to the district court to determine whether dismissal for violation of the Speedy Trial Act should be with or without prejudice to his re-prosecution. Id. at *23.

The Government argues that Marshall does not control, given the facts of this case. In particular, at the time that this case went to trial, Marshall had not been decided and there was no case law in this jurisdiction holding that the finding of a notice of Rule 404(b) evidence did not toll the Speedy Trial Act. Since there was no case law on point in existence at that time, trial counsel cannot be found to have been deficient in his professional performance.

Defendant responds that although the Government is correct that there was no case on point in existence at the start of this trial, the Court of Appeals had been "suggesting" in prior case law that a Rule 404(b) notice was analogous to a Rule 609 pretrial notice. The Court of Appeals had already held in United States v. Harris, 491 F.3d 440, 443-44 (D.C. Cir. 2007), that a Rule 609 notice was not a pretrial motion for purposes of tolling the Speedy Trial Act clock. In 2008, the Court of Appeals applied its holding in Harris in United States v. Van Smith, 530 F.3d 967, 970 (D.C. Cir. 2008), holding once again that a Rule 609 filing was not a pretrial motion for purposes of tolling the Speedy Trail Act clock. Obviously, Van Smith, decided after Harris, was also decided long after Defendant's trial had been concluded.

However, trial counsel cannot be held responsible for failing to predict the future holdings of an appellate court. If trial counsel had followed the path that present counsel now insists upon, he would have been making a motion for which there was no direct precedent. Under the Sixth Amendment, trial counsel is held to "an objective standard of reasonableness," i.e., following the "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 691 (1984). Applying this standard, the Court cannot conclude that trial counsel's failure to make an argument under the Speedy Trial Act for which there was no supporting precedent in our circuit, fell below an objective standard of reasonableness.

Second, Defendant argues that trial counsel's performance prejudiced his defense, i.e., that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. Strickland, 466 U.S. at 687, 693-94. Defendant cannot demonstrate any prejudice. It cannot be said that there was a "reasonable probability" that if defense counsel had made a Speedy Trial Act Motion based upon a new theory for which there was no supporting case law in our Circuit, that he would have prevailed.[1]

### B. Defendant's Posse Comitatus Act Claim

Defendant argues that trial counsel rendered ineffective assistance of counsel because he failed to move to suppress the evidence or object to the introduction of the evidence obtained by military personnel and the testimony of military personnel in violation of the PCA, 10 U.S.C. § 375. Although the PCA forbids the use of only Army or Air Force personnel in non-military law

---

[1] Defendant also argues that if a Motion had been made and granted, his case would have been dismissed with prejudice. That result is very unlikely given the serious nature of the offenses in this case, as well as the extremely strong evidence the Government presented at trial. Defendant cannot show prejudice because he has failed to establish that his case would have been dismissed with prejudice.

enforcement activities, the Secretary of Defense has issued regulations, authorized by 10 U.S.C. § 375, prohibiting direct participation by all military personnel including members of the Navy in any civilian search, seizure, arrest, or other similar activity unless expressly authorized by law. The Government recognizes that the NCIS is the federal law enforcement agency which investigates those felony offenses that affect the interests of the Navy and Marines; consequently, they act as agents of the Navy and are bound by the provisions of the Posse Comitatus Act. Govt. Opp'n at 25; United States v. Yunis, 924 F.2d 1086, 1094 (D.C. Cir. 1991). Yunis squarely held that "[r]egulations issued under 10 U.S.C. § 375 require Navy compliance with the restrictions of the Posse Comitatus Act...." 924 F.2d at 1094.

However, even though that Act clearly restricts military involvement in civilian law enforcement, it is not the intent of the PCA to limit the military from investigating criminal activities committed by its own members whether such activities occur on or off a military base. Applewhite v. U.S. Air Force, 995 F.2d 997, 1001 (10th Cir. 1993); United States v. Griley, 814 F.2d 967, 976 (4th Cir. 1987). There can be no question that the Defendant, an Ensign in the Navy, was on active duty with the United States Navy in April 2007, the date of this offense. Given that fact, NCIS had an independent military purpose for participating in the investigation of Defendant's activities. The cases cited by Defendant are distinguishable from this case because they all involved defendants who were not in the military, but were the subject of criminal investigation which did involve the participation of investigators who were members of the military. That is precisely the conduct prohibited by the Posse Comitatus Act.

For these reasons, Defendant's trial counsel was not ineffective in failing to raise the argument that the evidence in question should have been excluded because the Government violated the PCA.²

C.  **Defendant's Chain-of-Custody Claim**

The Defendant insists that an evidentiary hearing is necessary to decide this issue. The Government leaves it up to the Court's discretion as to whether a hearing is necessary. For the reasons that follow, the Court has concluded that an evidentiary hearing is not necessary.

Defendant argues that trial counsel rendered ineffective assistance of counsel because he failed to object to the Government's introduction of the Toshiba laptop and its hard drive that were recovered from his home pursuant to a search warrant. In particular, Defendant states that the hard drive which was introduced into evidence "did not match the inventory for the computer that was seized from Mr. Lewis' residence," and that because no chain-of-custody for the hard drive had been established, the evidence should have been excluded from trial. Def.'s Motion to Vacate at 13. This failure prejudiced Defendant because exclusion of the computer and the hard drive would have resulted in the Government not being able to prove the "interstate nexus" element of the charged defenses, thereby weakening (and perhaps destroying) the Government's case. Id. at 13-14.

---

²  Defendant argues that there was extensive NCIS involvement in this non-military criminal investigation. For example, NCIS officers were on the scene when Metropolitan Police Department ("MPD") officers read the Defendant his rights, they read the Defendant his rights after the MPD officers did so, they were actively involved in the search warrant and seizure of evidence used at trial and they testified against Defendant at trial. However, those facts do not violate the PCA because NCIS was investigating an offense that clearly affected the interest of the Navy and Marines. United States v. Chon, 210 F.3d 990, 993-94 (9th Cir.), cert. denied, Chon v. United States, 531 U.S. 910 (2000).

The trial record demonstrates that trial counsel would have had no basis to raise the chain-of-custody argument. Special Agent ("SA") Young, who participated in the execution of the search warrant at the Defendant's home the day after his arrest, found a Toshiba laptop on the floor, partially under the bed in Defendant's bedroom. SA Young testified that he seized the computer, removed the hard drive, noted the serial numbers of both the computer and the hard drive, copied the hard drive, reinserted it back into the computer and conducted a forensic examination on the copy of the hard drive which contained images and information corroborating the testimony of Detective Palchak regarding the on-line chat between him and the Defendant. Tr. 9/11/07 p.m., 58-59, 60-64. SA Young retrieved the computer from the FBI's Washington Field Office's Evidence Control Center where he worked, before he assessed the contents of the hard drive.

Thus, the Government is correct that SA Young's testimony regarding the recovery and storage of the computer and the hard drive did establish a chain-of-custody for those two items. Although trial counsel did use SA Young's Examination Notes to "impeach" his testimony, and that impeachment showed some discrepancy in his notes regarding the identification of the hard drive that was recovered and ultimately analyzed, it is clear that the jury must have credited SA Young's testimony and must have rejected the impeachment testimony.

For these reasons, the Court concludes that Defendant's Motion to Vacate must be **denied**.

November 16, 2011

Gladys Kessler
United States District Judge